# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SANDRA D. GAMEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | )  No. 13-4199-CV-W-DGK-SSA |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Sandra D. Gamez seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Social Security Disability Insurance benefits ("SSDI") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments but retained the residual functional capacity ("RFC") to perform work as a small parts assembler, hospital products assembler, and electric assembler/light fixture assembler.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff's SSDI and SSI applications, as amended, alleged disability beginning March 30, 2004. After the Commissioner denied her applications on November 9, 2006, Plaintiff requested an ALJ hearing. An initial hearing was held on March 5,

2008, and a supplemental hearing was held on August 26, 2009. The ALJ found that Plaintiff was not disabled on September 28, 2009.

The Social Security Administration Appeals Council granted Plaintiff's request for review and remanded the case to another ALJ on December 22, 2010. After holding another hearing on March 16, 2012, the second ALJ found that Plaintiff was not disabled and issued a decision to that effect on April 12, 2012. The Appeals Council denied Plaintiff's request for review on July 30, 2013, leaving the ALJ's decision as the Commissioner's final decision.[1] Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

---

[1] As two ALJs have issued decisions in this case, the Court uses "the ALJ" to refer only to the second ALJ, Dennis LeBlanc.

**Discussion**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred in formulating her RFC and in posing a question to the vocational expert ("VE"). These arguments lack merit.

**I.      The ALJ properly formulated Plaintiff's RFC.**

Plaintiff first challenges the ALJ's RFC finding. A claimant's RFC is fundamentally a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). In determining this medical question, the ALJ should accord a treating physician's opinion controlling weight so long as it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, such as additional medical evidence or the claimant's testimony. *Myers*, 721 F.3d at 525.

Plaintiff specifically argues that the ALJ, in making his RFC determination, erred by failing to consider: (1) all of her GAF scores; (2) an opinion by J.B. Astrik, M.D.; (3) fluctuation of her psychotic impairments; and (4) her fibromyalgia impairments.

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

### A. Substantial record evidence supports the ALJ's decision to discount Plaintiff's GAF scores.

Plaintiff first contends that the ALJ failed to properly consider her GAF scores, which range from 21 to 60 but are mostly in the 45–60 range.[3] Low GAF scores have limited probative value: they do not per se establish disability, *see Partee v. Astrue*, 638 F.3d 860, 862–63 (8th Cir. 2011), and the Commissioner has declined to endorse their use in determining the requirements of mental disorders. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000). Rather, an ALJ "may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010). This means that an ALJ may discount a GAF score that conflicts with the rest of the assigning physician's opinion. *See Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996).

The ALJ explicitly discounted all of Plaintiff's GAF scores below 55 to the extent they suggest Plaintiff is unable to work. R. at 23–28. Record evidence supports this analysis for two reasons. First, some GAF scores were assigned in medical reports that elsewhere indicated Plaintiff had much higher mental functioning. For example, Margaret L. Harlan, Ph.D. and Ellen Moore, Ph.D. each assigned Plaintiff a GAF score of 21, which indicates delusions and hallucinations, serious impairment in communication or judgment, or inability to function in almost all areas. R. at 693, 1061; *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000). However, during those consultations Plaintiff demonstrated intact cognitive abilities with some deficits in short-term memory and abstract thinking, was generally well-oriented, could count backwards from twenty by threes, and was

---

[3] The Global Assessment of Functioning ("GAF") is a numeric scale ranging from 0 to 100, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. rev. 2000).

able to repeat seven digits forward and backwards, which indicates higher cognitive functioning than a severe GAF score of 21 suggests. R. at 689, 1055–56. Similarly, the GAF score of 35 assigned by Elaine Boyd, A.P.N. is undermined by her contemporaneous findings that Plaintiff had a euthymic mood, was well-oriented, spoke normally, and demonstrated linear and well-organized thought processes. R. at 698–99. These internal inconsistencies deprive the lowest GAF scores of any significant weight. The same flaw afflicts the GAF scores assigned by five other examiners. *See* R. at 24 (highlighting inconsistencies presented by Marlin A. VanSiggern, L.C.S.W.), 25 (Ali Mehrunissa, M.D.), 26–27 (an individual at Pathways whose signature is illegible), 27 (Steven Adams, Psy.D.), 27–28 (Brian C. Parsells, D.O.).

Second, other objective medical evidence undermines Plaintiff's other GAF scores below 55. For example, consultative psychologist Robert Pulcher, Ph.D. ("Dr. Pulcher"), treating physician Mahesh Patel, M.D. ("Dr. Patel"), and treating psychiatrist Stephen J. O'Neill, M.D. ("Dr. O'Neill") each assessed Plaintiff with normal levels of cognitive functioning. R. at 440–41, 484–86, 557, 560, 562–63. Dr. Pulcher specifically noted that Plaintiff "did not give evidence of severe depression or anxiety by affect or other non-verbal scores," even if she was "slightly anxious due to her living situation." R. at 486. Dr. Patel perceived a litany of markers of moderate mental functioning: clear speech, no psychomotor agitation or retardation, alertness and attentiveness, fair concentration abilities, full orientation, full memory capabilities, and logical thought processes. R. at 441. Dr. O'Neill noted that Plaintiff was slightly distracted, but she was cooperative and her memory was intact. R. at 679. These objective findings of only moderate mental limitations indicate that Plaintiff's lowest GAF scores, which are not highly probative to begin with, do not accurately reflect her overall level of functioning. Accordingly, substantial record evidence supports the ALJ's decision to give them little weight.

5

## B. The ALJ did not err in ignoring a statement by Dr. Astrik.

Next, Plaintiff argues that the ALJ should have discussed an opinion by J.B. Astrik, M.D. ("Dr. Astrik") stating, "Her psychiatric condition also will possibl[y] keep her from being able to do a whole lot of activities." R. at 839. The ALJ must consider medical opinions that "reflect judgments about the nature of severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite [her] impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Here, Dr. Astrik's opinion regarding Plaintiff's mental impairments does not qualify as a medical opinion worthy of consideration. Dr. Astrik did not discuss what Plaintiff can still do despite her mental impairments or suggest that Plaintiff's mental conditions required *any* specific limitations. Rather, he vaguely opined only that Plaintiff might be limited in a "whole lot of activities." R. at 839. Dr. Astrik also did not say that Plaintiff's condition would *probably* keep her from doing these activities, but rather that it was "possible." R. at 839. Thus, the ALJ was not required to consider this opinion under the Regulations. The Court rejects Plaintiff's argument on this point.

## C. Substantial record evidence shows that Plaintiff was not credible despite having a mental illness that might occasionally hide its symptoms.

Plaintiff next challenges how the ALJ handled evidence of mental functioning in light of her psychotic illnesses. Plaintiff testified that she experiences chronic depression, anxiety, and significant paranoid ideation. R. at 111, 120, 121–22. The ALJ found that insofar as Plaintiff was testifying that these impairments restrict her ability to work, she was not credible because, in part, she demonstrated an ability to work after her alleged disability onset date. R. at 22. Plaintiff argues that psychotic illnesses like hers "wax and wane over time" and so periods of

remission are to be expected and thus are not probative of credibility (Doc. 12, at 16). By holding her work history against her, Plaintiff argues, the ALJ erred.

The ALJ properly discredited Plaintiff's credibility. When a claimant has a psychotic illness, occasional symptom-free periods by themselves do not mean that disability has ceased. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("[T]otal disability is not incompatible with alternating phases of active illness."). However, the ALJ may conclude that the disability is exaggerated where other substantial evidence in the record complements the symptom-free periods. *Cf. Dreste v. Heckler*, 741 F.2d 224, 226 n.2 (8th Cir. 1984) (per curiam) (noting that the ALJ erred by finding the claimant was not disabled because of periods of psychotic illness remission, where "overwhelming evidence" helped contradict those periods).

Here, Plaintiff consistently worked for extended periods of time, indicating that her illness was not going through "alternating phases" of waxing and waning disability. *See Andler*, 100 F.3d at 1393. Plaintiff was an assistant manager at a fast food restaurant from July 2005 until October 2005, where she "direct[ed] incoming employees to their duties" and "r[a]n morning reports." R. at 116–18, 312–13. She worked as a home health aide from 2007 until 2009. R. at 377. Finally, she worked at a nursing home from October 2009 until February 2010, where she created daily reports. R. at 377–78. Plaintiff's work history strongly indicates that, to the extent Plaintiff was testifying that her chronic depression, anxiety, and paranoid ideation restricted her ability to work, such testimony was not credible.

Further, the ALJ gave other valid reasons for rejecting Plaintiff's testimony besides her work history. The ALJ pointed out that Plaintiff has given three different reasons at three different times why she was fired from her assistant restaurant manager position. R. at 22 (citing R. at 118, 302, 339). He also seized on Plaintiff's inconsistent statements regarding her ability to

perform routine household chores. R. at 22. For instance, Plaintiff testified in 2009 that she was able to perform multiple household chores each week for an elderly woman while working as a home health aide from 2007 until 2009. R. at 49–50. However, Plaintiff testified in 2012 that she has required assistance in completing household chores since 2006, and is unable to perform chores such as laundering clothes, washing dishes, or vacuuming. R. at 107, 124, 126–27. She also testified that she left her home health aide job because she could not keep up with her own household chores while performing them for someone else. R. at 109. These stark inconsistencies are substantial record evidence, so the ALJ properly found Plaintiff incredible on this additional ground. The Court rejects this point.

### D. Plaintiff does not provide enough facts or law to support her fibromyalgia arguments.

Finally, Plaintiff argues that the ALJ erred in formulating her RFC by discounting the symptoms of her fibromyalgia. Plaintiff does not indicate even a single limitation caused by fibromyalgia that the ALJ failed to incorporate into his RFC formulation. Because Plaintiff did not develop her argument sufficient to guide the Court, it is rejected. *See* Fed. R. Civ. P. 7(b)(1)(B) (requiring movants to "state with particularity the grounds for seeking the order"); *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties.").

Plaintiff's procedural argument fails for the same reason. After the ALJ wrote his decision but before the Appeals Council issued its order, the Social Security Administration promulgated Ruling 12-2p, which deals with evaluating fibromyalgia in disability claims. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Plaintiff argues that the Court must remand to the ALJ because the Appeals Council did not evaluate Plaintiff's fibromyalgia impairments in accordance with Ruling 12-2p. However, Plaintiff does not identify any part of the Appeals

Council's decision or the ALJ's decision that suggests Ruling 12-2p was disregarded. Absent such an argument from Plaintiff, the Court sees no reason to question the Appeals Council's preface that it "applied the laws, regulations and rulings in effect as of the date [it] took this action." R. at 1. Therefore, the Court finds that Ruling 12-2p was properly considered, and rejects all of Plaintiff's fibromyalgia arguments.

**II. The ALJ's hypothetical question to the VE was proper.**

Turning to the ALJ's Step Five determination, Plaintiff argues that VE's answer to the ALJ's hypothetical question was too deficient to constitute substantial supporting evidence. The ALJ's hypothetical question posited a claimant with some mental limitations but who retained the capacity to "understand, remember and carry out non-detailed two to three-step instructions in a routine work setting involving few changes, where their interaction with supervisors, coworkers and the public would be superficial in nature." R. at 129–30. Plaintiff contends the hypothetical question should have incorporated the impairments caused by her low GAF scores and her deficiencies in concentration, persistence, and pace.

First, as discussed above, the ALJ did not find Plaintiff's low GAF scores probative, and so did not need to include them in the hypothetical question. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."). Second, the ALJ did find that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. R. at 17. Although the hypothetical question avoided the phrase "deficiencies in concentration, persistence, and pace," it adequately captured those limitations by describing a job with "non-detailed" and "routine" work that did not require frequent contact or unusually close interactions with other people. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that a hypothetical question including the "ability to do

only simple routine repetitive work, which does not require close attention to detail" sufficiently described deficiencies of concentration, persistence or pace).

Thus, the VE's answer that Plaintiff could perform work existing in significant numbers is substantial evidence supporting the ALJ's determination at Step Five. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  August 19, 2014     /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT